THE STATE, DEFENDANT IN ERROR, v. WILLIAM ARTHUR, PLAINTIFF IN ERROR.

Submitted July 3, 1903—Decided February 23, 1904.

1. Under section 58 of the Crimes act of 1898 (*Pamph. L., p.* 810), as amended in 1899 (*Pamph. L., p.* 215), in order to constitute the offence of knowingly having in possession "any paper, document, slip or memorandum that shall pertain in any way to the business of lottery policy, so called," it is not essential that

there be in truth such a game or business conducted. The pretended, or "so-called" business, is equally under the ban of the statute.

2. The question whether a witness has such special knowledge or experience as to qualify him to give opinion evidence, is a question of fact for the determination of the trial court, whose finding is not reviewable on writ of error if there be any legal evidence to support it.

On error to the Hudson Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and PITNEY.

For the plaintiff in error, *Weller & Lichtenstein.*

For the defendant in error, *William H. Speer,* prosecutor of the pleas.

The opinion of the court was delivered by

PITNEY, J.  The plaintiff in error was convicted of a violation of section 58 of the Crimes act of 1898 (*Pamph. L., p.* 810), as amended in the following year.  *Pamph. L.* 1899, *p.* 215.  The indictment charges that he "did knowingly, willfully and unlawfully have in his possession certain papers, documents, slips and memoranda, which said papers, documents, slips and memoranda then and there pertained to the business of lottery policy, so called."

He assigns error upon certain rulings of the trial court with respect to the admission of evidence, and also upon the denial of a motion made for the defendant's dismissal on the ground of want of evidence.  The case comes before us upon a common law bill of exceptions.

The first exception relates to a ruling of the court admitting Patrick Hayes, who, as captain of police, participated in defendant's arrest, to testify as an expert to the effect that certain papers found upon the defendant when arrested were policy slips and pertained to policy.  The objection was that Hayes was not qualified to testify as an expert.  Before re-

cciving the opinion of this witness the trial court had permitted him to be examined respecting his qualification. He testified that during his experience of over thirty years upon the police force he had many times been brought into contact with such papers and documents as the ones in question.

An expert may be qualified by study without practice, or by practice without study, but mere observation without either is insufficient. *Wheeler & Wilson Company* v. *Buckout,* 31 *Vroom* 102.

The question whether a given witness has the necessary special experience to qualify him to give opinion evidence is a question of fact for the determination of the trial court. The authorities agree that the admission of a witness thus to testify as an expert is largely in the discretion of the trial court, and that its decision is final unless shown to be erroneous in law. If there be any legal evidence to support it the finding is not erroneous in law, and is not reviewable on common law writ of error. *Castner* v. *Sliker,* 4 *Vroom* 95; *New Jersey Zinc Co.* v. *Lehigh Zinc Co.,* 30 *Id.* 189, 194; *Elvins* v. *Delaware and Atlantic Telephone Co.,* 34 *Id.* 243, 247; 8 *Encycl. P. & Pr.,* tit. *"Expert Witnesses,"* 749. The decisions in *Pennsylvania Railroad Co.* v. *Root,* 24 *Vroom* 253, and *Laing* v. *United New Jersey Railroad and Canal Co.,* 25 *Id.* 576, are not opposed to the rule just stated. There being evidence from which the trial court could fairly decide that the witness Hayes had the requisite experience to qualify him, the first exception is unfounded.

The second exception raises the question whether it was the proper subject of opinion evidence to permit the officer to testify that the slips and papers in question were such as pertained to policy. This depends upon the question whether the papers contained sufficient on their face to give information of their true character to the members of the jury as men of common understanding. If they did, opinion evidence was perhaps inadmissible; if not, it was clearly admissible. The documents in question are not set forth in the case as presented to us, and therefore we cannot consider this

exception. So far as the case discloses the character of the slips in question, it indicates that they contained abbreviations and obscure references that required the evidence of an expert to determine their true character and meaning.

The third exception relates to the admission of the policy slips in evidence, the ground of objection being that they were not proven to pertain to the business of lottery policy. The gist of the objection is that the case did not show that any such game or business existed. But as we read the statute, it is by no means essential to the prohibited offence that there be in truth such a game or business conducted. As amended in 1899 (*Pamph. L., p.* 215), section 58 prohibits the advertisement or distribution of advertisements of any lottery company or place in which the tickets, slips or advertisements of such a company may be procured, and prohibits any person from being engaged in any capacity in or about any place where lottery slips or copies of numbers or lists of drawings of any lottery drawn, *or alleged to be drawn,* shall be printed, kept or used in connection with the business of lottery or lottery policy, *so called,* and prohibits any person from knowingly having in his possession any paper, document, slip or memorandum that shall pertain in any way to the business of lottery policy, *so called.* So far as the manifest object of this statute is concerned, the only practical difference between a lottery that is actually drawn and a lottery that is alleged to be drawn, is that the former is a game of chance and the latter a mere swindle. Traffic in the tickets of a pretended lottery is quite as injurious to the community as if there were a real lottery, and is expressly prohibited by the statute.

Other exceptions to admission of evidence are sufficiently covered by what has already been said.

The sole remaining exception is to the refusal of a motion for the defendant's discharge, based on the ground of want of evidence. It was insisted that there was no evidence that there was a lottery policy game in existence, nor evidence to show that the papers offered pertained to that business. These

points we have already disposed of. It was further objected that there was no evidence that defendant knew the papers that were found in his possession pertained to lottery policy. But there was evidence of statements made by him at the time of his arrest from which the jury had a right to believe that he was fully aware of the character of the papers.

No error being found in the record, the conviction under review must be affirmed.