NELLIE CONNERS *vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, April Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

In taking land *in invitum* for public use, a municipality must comply with all statutory or charter requirements, and this must appear upon the face of the proceedings.

The control of public parks belongs primarily to the State and in acquiring and managing them, municipalities act as administrative or governmental agencies, exercising an authority delegated by the State, and are always subject to legislative control.

In the present case, the plaintiff claimed that the condemnation proceedings, by which her property, situated in the town of Orange, was taken by the City of New Haven under its charter power to acquire land within or without the city limits for park purposes, were void because the town of Orange was not a party to the proceedings and was thus deprived of a valuable interest in the land—its power of taxation—without compensation. *Held* that the claim was without merit since the power to tax is not a property right, but an attribute of sovereignty always held subject to the will of the legislature.

The plaintiff also claimed that the proceedings were void because the report of the Bureau of Compensation to the Department of Public Works did not state as required by the charter that an appropriation had been made to pay the damages awarded and, further, because the Department of Public Works in its report to the Board of Aldermen failed to comply with the charter provision that it should "annex" to such report a "survey showing the particular designation of the land to be taken." *Held* that the amendment of the report by adding the words, "appropriation available by bond issue," before its acceptance by the Board of Aldermen and the filing of a survey in the office of the city engineer and a copy thereof with the committee of the Board of Aldermen, to which the report was referred, substantially fulfilled the essential purposes of the charter provisions.

Argued April 10th—decided July 11th, 1924.

APPLICATION praying that an alleged assessment of damages to the amount of $850 by the board of aldermen of the City of New Haven, in the condemnation of her land for park purposes, be annulled or a reassess-

ment be made,—brought to and tried by the Superior Court in New Haven County, *Banks, J.;* the court reassessed the plaintiff's damages at $1,050, and from this judgment she appealed. *No error.*

*Walter J. Walsh,* for the appellant (plaintiff).

*George W. Crawford,* with whom was *Thomas R. Robinson,* for the appellee (defendant).

HAINES, J. The appellant claims that on the facts disclosed by the record, the entire condemnation proceeding was void, and she predicates error on the part of the Superior Court in failing to sustain her claims in several particulars, briefly stated as follows: (a) that the town of Orange had an interest in the lands as a source of revenue from taxation, but was not made a party to the action or in any way notified or considered, so that damages and benefits were not assessed for all parties in interest as required by law, and (b) that the requirements of the charter of the City of New Haven as to the taking of lands by condemnation, were not legally complied with in the following respects: (1) that the return made by the Bureau of Compensation to the Department of Public Works did not state that an appropriation had been made to pay for the lands proposed to be taken; (2) that a survey of the lands was not "annexed" to the report of the Department of Public Works made to the Board of Aldermen; (3) that the Board of Aldermen did not make it appear on the face of the proceedings that the necessary appropriation had been made to acquire the lands; and (4) that the records of the Board of Aldermen did not show a survey of the property.

On July 16th, 1923, the Board of Aldermen passed an order for the taking of the land of the plaintiff in the

town of Orange abutting on the old channel of West
River, so-called, for public park purposes, awarding
the plaintiff $850 therefor. This order was approved
by the mayor on July 18th, 1923, and written notice
of the approval was given to and received by the plain-
tiff on August 2d, 1923. The town of Orange was never
made a party to the condemnation proceedings, nor
was any notice given to that town of the proposed tak-
ing. The report of the Bureau of Compensation to
the Department of Public Works did not state that an
appropriation had been made to pay for the land, but
before the report of the Department of Public Works
was acted upon by the Board of Aldermen, it was
amended by adding the words "appropriation available
by bond issue."

The Department of Public Works prepared a survey-
map and layout as required by the charter, which was
filed and kept in the office of the city engineer, but it
was not "annexed" to the report made to the Board of
Aldermen. It is the practice in New Haven to file and
keep all maps of streets, squares and parks in the office
of the city engineer. When the report of the Depart-
ment of Public Works to the Board of Aldermen was
being considered, the survey-map was presented to and
examined by the committee of the Board of Aldermen
to which the matter had been referred for public hearing
and report, and the details were fully explained to the
committee by the city engineer.

The City of New Haven was empowered by its char-
ter to acquire lands, by condemnation proceedings if
necessary, for purposes of a public park, and in pursu-
ance thereof, instituted such proceedings against the
land of the plaintiff. She was awarded $850 therefor
and appealed to the Superior Court.

The appellant makes the preliminary claim of law
that "when land of an individual is taken in invitum for

public use, under the provisions of the positive law, every requisite of the statute must be complied with, and this must appear on the face of the proceedings for taking the land"; and "no rights in the petitioner's land can be acquired in condemnation proceedings under the charter, unless every requirement of the charter is complied with." These are correct general statements of the law which obtains in this State. *Crawford* v. *Bridgeport*, 92 Conn. 431, 435, 103 Atl. 125; *New Milford Water Co.* v. *Watson*, 75 Conn. 237, 242, 52 Atl. 947, 53 *id.* 57. In the latter case we said: "No land could be so taken, nor any right to divert water from another's land gained, unless every step to that end prescribed in the charter, was fully accomplished."

As to the failure to include the town of Orange in the proceedings in question, it must be borne in mind that the land was taken for the purposes of a public park under authority given by the State. The City of New Haven is authorized "to procure by gift, purchase, lease, exchange, or other contract, or by condemnation as herein elsewhere provided, real property, whether within or without the limits of the City of New Haven, for the purpose of providing public parks or the enlarging of existing parks. . . ." Charter and Ordinances, p. 46, § 90.

In this respect and for this purpose, the City of New Haven was not acting for itself, but as an administrative tribunal only, and authorized thereto by the State, and the rights thus acquired inured to the benefit of the general public and not to the City of New Haven alone. *Norwich Gas & Electric Co.* v. *Norwich*, 76 Conn. 565, 573, 57 Atl. 746; *State* v. *Suffield & Thompsonville Bridge Co.*, 81 Conn. 56, 62, 70 Atl. 55; *Hartford* v. *Maslen*, 76 Conn. 599, 611, 57 Atl. 740.

In the last-named case we said: "The control of public parks belongs primarily to the State. The authority

which the common council or park commissioners of a city may exercise in the control and management of public parks is not derived from citizens of the municipality within the limits of which such parks are situated, but from the legislature. Such parks are held not for the sole use of the people of a particular municipality, but for the use of the general public which the legislature represents. Municipalities in controlling and managing such public parks act as governmental agencies, exercising an authority delegated ′ by the State, and are always subject to legislative control."

In its very nature, the right to take private property for public use is an "attribute of sovereignty," and all property within its jurisdiction is subject to this paramount right of the State to appropriate it to the public use when in the opinion of the legislature, the public good requires. The sole constitutional restriction upon this power is that just compensation shall be made. Conn. Const., Article First, § 11.

The contention of the appellant is that the town of Orange "had an interest in this land" and that by condemning it, "the income of the town . . . was necessarily decreased."

The assumption is that the right to tax is an interest in the land which is taxed. But the right of taxation is not a property right. The entire property right in land rests with those who have (1) the right of occupation, (2) the right of excluding others, (3) the right of transfer, or (4) the right of testamentary disposition, one or all. Obviously none of these rests with the town of Orange. "Property itself, in a legal sense, is nothing more than the exclusive right 'of possessing, enjoying and disposing of a thing.'" *Chicago & W. I. R. Co.* v. *Englewood Connecting Ry. Co.*, 115 Ill. 375, 385, 4 N. E. 249.

On the other hand, the power to tax, like the power

of eminent domain, is one of the "attributes of sovereignty," inherent and necessary to the existence of every government, and the exercise of both powers, its mode, form and extent, within constitutional requirements, is unlimited. Both are in effect rights to take private property for public use, and the mode of their exercise may at any time be changed by the sovereign authority. 27 Amer. & Eng. Enc. of Law, pp. 583-587.

Plenary power being thus in the State to take or to tax the land in question by proper administrative agencies, the town of Orange has no right superior to or independent of the legislature, and its right to tax is held subject to the will of the legislature. It follows that the town of Orange was not a necessary party to these proceedings.

It remains to consider the claim that the provisions of the charter of the City of New Haven were not complied with as required by law. These relate to the survey and map of the premises, and to providing the necessary funds for paying for the land taken.

The provisions of the charter and ordinances, so far as they relate to the questions raised by the appeal, are, that "no public improvement of any kind shall be ordered by the board of aldermen, or other authority having power to authorize the same, until an appropriation for said improvement has been duly made." Charter and Ordinances, p. 74, § 154. The Department of Public Works is required by § 78 of the charter, among other things, to cause a survey to be prepared. This was done as required. The Bureau of Compensation "shall make a report of its doings to the department of public works, and in case the damages shall exceed the assessment of benefits, shall state whether there has been any appropriation made in accordance with law to pay for the same, and said department shall report its doings to the board of aldermen in writing,

and shall annex thereto a survey showing the particular designation of the land to be taken or the layout of the proposed improvement." § 80. "Said board of aldermen may, after all necessary appropriations have been made, accept said report, and adopt such layout, or assessment." § 81.

In the present instance, the report of the Bureau of Compensation to the Department of Public Works did not in fact state that an appropriation had been made as required by § 80, nor did the Department of Public Works in turn "annex" the survey when reporting in writing to the Board of Aldermen. It does appear, however, that the report was amended before its acceptance by the Board of Aldermen, by adding the words "appropriation available by bond issue," and was thereafter accepted and acted upon by the Board of Aldermen. Though the expression "appropriation available by bond issue" lacks the exactness of language of the charter, it was obviously used to convey the same thought, and was added for the express purpose of meeting the charter requirement. *Woodward* v. *Reynolds*, 58 Conn. 486, 490, 19 Atl. 511

It is apparent, first, that the necessary funds for this work had in fact been provided, and second, that this fact was stated in the report of the Department of Public Works before the Board of Aldermen acted thereon. The condition under which the Board of Aldermen were authorized to make the order under § 154, was, in full purpose and effect, complied with. Therefore, notwithstanding the failure of the Bureau of Compensation to include this statement in the report to the Department of Public Works, the essential purpose of acquainting the Board of Aldermen with the fact before they took action, was fully accomplished.

The requirement that the survey must be "annexed," if literally complied with, would, as the appellant con-

tends, compel the actual physical fastening of the survey to the written report of the Department of Public Works. Under such a literal requirement, the handing in of the written report on one paper and the survey on another and unattached paper, though at the same moment, would not meet the requirements of the law. This would violate the most elementary rule of statutory construction and reject the substance for the form. As matter of fact, the report and survey were both in the hands of the committee of the Board of Aldermen which was empowered to consider the report. The plain purpose and intent of the provision is that both report and survey should be provided, to insure intelligent action by the Board of Aldermen. Not only so, but the survey was regularly filed in the city engineer's office, and was thus in legal effect, and for all essential purposes, in the possession of every department of the city government, including the Board of Aldermen.

While the provisions of the charter and ordinances should be complied with as literally as is reasonably possible, and while a closer compliance could wisely have been followed in the present case, we cannot ignore the real purpose to be served by the provisions. The finding makes it clear that this purpose was, in fact, fully met in the present case. Certainly no interests have been prejudiced in any way, and no unadvised action affecting the appellant, was taken.

Early decisions in this State show a disposition to look through the literal meaning of words and forms of procedure to the essential purposes to be served. *Todd* v. *Hall,* 10 Conn. 544; *West School District* v. *Merrills,* 12 Conn. 437; *Bartlett* v. *Kinsley,* 15 Conn. 327; *Baldwin* v. *North Branford,* 32 Conn. 47; *State ex rel. Rylands* v. *Pinkerman,* 63 Conn. 176, 28 Atl. 110. This disposition has been consistently evinced in later

decisions by this court, as e. g. *Perkins* v. *Colebrook*, 68 Conn. 113, 35 Atl. 772; *Torrington* v. *Messenger*, 74 Conn. 321, 50 Atl. 873; *National Fireproofing Co.* v. *Huntington*, 81 Conn. 632, 71 Atl. 911; *State* v. *Angus*, 83 Conn. 137, 75 Atl. 623.

While it is true that laws depriving owners of their property should be strictly construed, yet "all laws should receive a sensible construction.  General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence.  It will . . . therefore be presumed that the legislature intended exceptions to its language, which would avoid results of this character," and "the intention of the legislature may be gathered from a view of every part taken and compared together, and, when the true intention is ascertained, it will prevail over the literal sense of the terms."  *United States* v. *Kirby*, 74 U. S. (7 Wall.) 482, 486, 487; *Budd* v. *Budd*, 59 Fed. 735, 738; *Donnelly* v. *New Haven*, 95 Conn. 647, 667, 111 Atl. 897; *Mulcahy* v. *Mulcahy*, 84 Conn. 659, 662, 81 Atl. 242.

Our conclusion is that the informalities of procedure complained of in the present case were not such as to justify holding the proceedings void.  The end sought by the provisions in the charter and ordinances referred to, has, we think, been fully accomplished.

There is no error.

In this opinion the other judges concurred.